UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HILDEBRANDO VARGAS,

    Petitioner,

v.

R. M. DIAZ,

    Respondent.

Case No. 13-cv-01584-VC

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; GRANTING, IN PART, CERTIFICATE OF APPEALABILITY**

## INTRODUCTION

Hildebrando Vargas has filed a federal habeas petition challenging the validity of his conviction, following a plea of no contest, of two counts of committing a lewd or lascivious act on a victim under the age of fourteen. His primary contention is that he was denied the right to effective assistance of counsel because his lawyer did not tell him that he could get the charges dismissed based on the 12-year delay from the time the criminal complaint was filed to the time he was actually arrested. Because the lawyer's performance was not obviously deficient, and because in any event Vargas was not obviously prejudiced, the petition is denied.

## BACKGROUND

On July 22, 1998, the Monterey County District Attorney's Office filed a felony complaint against Vargas, alleging three counts: (1) sexual battery; (2) sexual penetration with a foreign object; and (3) lewd or lascivious act on a victim under the age of fourteen. Dkt. No. 6-2, *In re Hildebrando Vargas on Habeas Corpus*, No. HC 7735 (Cal. Sup. Ct. Jul. 27, 2012), at 1. An arrest warrant promptly issued, but Vargas was not arrested until 12 years later. *Id.* He first appeared in court on May 20, 2010. Resp.'s Ex. A, Monterey County Superior Court Minute Ord.

On November 30, 2010, the prosecutor amended the complaint to include an additional charge of committing a lewd act upon a child under the age of fourteen. Dkt. No. 6-1 at 4; Dkt. No. 6-2 at 1. On the same date, Vargas pleaded no contest to the two counts of committing a lewd and lascivious act on a victim under the age of fourteen in exchange for an eight-year prison term. *Id.* at 2. On December 28, 2010, the court sentenced him to eight years in prison. *Id.*; Dkt. No. 6-1 at 8.

Vargas did not file a direct appeal. On May 23, 2012, he filed a petition for a writ of habeas corpus in the Monterey County Superior Court, which was denied in a written order on July 27, 2012. Dkt. No. 6-2 at 1, 7. Vargas filed petitions for a writ of habeas corpus in the California Court of Appeal and California Supreme Court, which were summarily denied on November 7, 2012 and February 20, 2013, respectively. Dkt. Nos. 6-4; 6-5.

On April 9, 2013, Vargas filed this federal petition for a writ of habeas corpus. Respondent moved to dismiss the petition as untimely. Dkt. No. 6. On November 13, 2013, the Court denied the motion without prejudice to re-filing should Vargas prevail on the merits of his claims. Dkt. No. 12. On April 17, 2014, the case was reassigned to the undersigned judge. The matter is now fully briefed on the merits.

Vargas's conviction is based on a plea, but the Probation Officer's Report, which Vargas attaches to his petition, provides a summary of the facts. Dkt. No. 1 at 60-63, 66-71. It explains that Vargas sexually molested his step-daughter and biological daughter over a period of many years, beginning when each girl was about nine or ten years old. *Id.* The record does not explain the twelve-year delay between the filing of the complaint and issuance of the arrest warrant in 1998, and Vargas's arrest in 2010.

### LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). In applying this deferential standard, a federal habeas court must determine what arguments or theories supported, or could have supported, the state court's decision; and then it must determine whether fair-minded jurists could disagree that those arguments or theories were inconsistent with Supreme Court precedent. *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d*). Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). In this case, the highest court to issue a reasoned decision on Vargas's petition is the Monterey County Superior Court.

**DISCUSSION**

I. Ineffective Assistance of Counsel Claims

Vargas' primary contention on habeas is that his plea was not knowing or voluntary, because his lawyer did not properly advise him in connection with the plea. In particular, he argues: (A) his lawyer failed to advise him of all the rights he was waiving; (B) his lawyer didn't give him enough time to consider the plea offer; and (C) his lawyer failed to inform him that the charges were subject to dismissal on speedy trial grounds.

To prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1410-11 (2011); *Harrington*,

3

1   131 S.Ct. at 788; *Premo v. Moore*, 131 S.Ct. 733, 740 (2011).  The general rule of *Strickland*, *i.e.*,
2   to review a defense counsel's effectiveness with great deference, gives the state courts greater
3   leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions
4   that are objectively unreasonable under AEDPA."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th
5   Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  When § 2254(d) applies,
6   "the question is not whether counsel's actions were reasonable.  The question is whether there is
7   any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*,
8   131 S.Ct. at 788.  In addition, the absence of evidence that counsel gave adequate advice does not
9   overcome the strong presumption that counsel's conduct was within the wide range of reasonable
10  professional assistance.  *Burt v. Titlow*, 134 S.Ct. 10, 17 (2013).

    A. Failure to Inform About Consequences of Plea

    Vargas claims that his trial counsel failed to advise him that, by accepting the plea, he would give up his rights to: (1) a jury trial; (2) subpoena witnesses on his behalf; (3) confront his accusers and challenge the evidence against him; (4) appeal; and (5) representation by counsel for trial and appeal.  Pet. at 28.  He also claims that counsel did not explain that accepting the plea meant he would have to register as a sexually violent predator and that failure to do so might be a felony; that he would have to pay a fine or victim restitution; that he would be subject to parole for several years; and that he might be deported to Mexico.  *Id.*  Vargas also claims that he only speaks Spanish, so that he was dependent upon his attorney for this information.

    In the context of a plea bargain, a claim of ineffective assistance of counsel focuses on whether the alleged ineffectiveness impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea.  *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2014).  At the plea bargain stage, it is difficult to assess a lawyer's performance because the record is not as full as it is after a trial, and an attorney often has insights that may not be apparent from the record.  *Premo*, 131 S.Ct. at 741.  Therefore, habeas courts must be mindful of their "limited role in determining whether there was manifest deficiency in light of information then available to counsel."  *Id.* (citation omitted).  To establish that counsel's ineffectiveness was prejudicial, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the petitioner would not

4

have entered a plea and would have instead gone to trial. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012).

As indicated in the Superior Court's order denying habeas relief, even if Vargas's attorney failed to inform him of the rights he was giving up, Vargas's plea was intelligent, knowing and voluntary because the documentary evidence shows that he was informed in court of the rights he was waiving and other consequences of pleading no contest. *In re Vargas*, HC 7735 at 5. For instance, the trial court minute order states that the court advised Vargas that, if he pleaded no contest, the convictions would constitute one strike under the three strikes law, he would be subject to lifetime registration as a sex offender, he would be subject to fifteen years on felony parole following his release and he would be giving up his privilege against self-incrimination and his rights to a jury trial and to confront and cross-examine witnesses against him. *See* Dkt. 21-2 at 19, November 28, 2010 minute order. The minute order also stated:

> After questioning the Defendant the court finds that he understood the nature of the charge and the possible range of penalties and other consequences of his plea, including the effect of the admission of any prior convictions. The Court finds that the Defendant understood and knowingly, voluntarily and intelligently waived each of the above rights, and that there was a factual basis for the plea.

*Id.*

In addition, Vargas initialed each line of the plea agreement, indicating that he understood he was giving up the above-mentioned rights, that he would be ordered to pay the State restitution in the amount of $200 to $10,000 and that, if he was granted felony probation, he might be required to pay restitution to the victims, to register as a sex offender and to submit to a search without the necessity of a search warrant. Dkt. No. 21-2 at 17. He also initialed the lines indicating that: (1) he discussed the charges, facts, possible defenses and consequences of the plea with his attorney; (2) he was pleading no contest freely and voluntarily and with the full understanding of the matters set forth in the information and the plea document; (3) if he was not a citizen of the United States, a plea of no contest would "result in deportation, exclusion from admission into this country, denial of naturalization and/or denial of re-entry into this country;" (4) he personally read the plea document, initialed each of the appropriate spaces, understood each

5

right outlined in it and gave up each right in order to enter a no contest plea; and (5) he was entering this plea because he was guilty. *Id.* at 17-18. The document was signed by Vargas, his counsel, who speaks Spanish, *see* Dkt. No. 1-1 at 31, and a Spanish interpreter. *Id.* at 18.

This documentary evidence shows that Vargas was fully informed of the consequences of his plea and establishes that his plea was voluntary, knowing and intelligent. And because he was fully informed, he was not prejudiced even if counsel failed to advise him.

Furthermore, because the amended complaint charged Vargas with four counts and he was able to plead no contest to two counts, it is unlikely that he would have rejected the plea and have gone to trial. *See Lafler*, 132 S.Ct. at 1384. Vargas argues that he would not have pled guilty to the fourth count because it was filed after the statute of limitations expired and he believes that, by the time he was arrested in 2010, all the counts were untimely. However, because an arrest warrant was issued in 1998, the statute of limitations on the three original counts had not expired. *See People v. Terry*, 127 Cal. App. 4th 750, 764 (2005) (citing Cal. Penal Code § 804) (issuance of arrest warrant tolls statute of limitations). Being able to plead to two counts instead of going to trial on three counts was still advantageous. Furthermore, it is not obvious that the Superior Court was wrong in pointing out that, based upon the victim's statement in the probation report, the district attorney's office could have brought still more charges against Vargas. *In re Vargas*, HC 7735 at 5 n.3.

B. Failure to Provide Time to Reflect on Plea

Vargas argues that his attorney pressured him into accepting the plea and only allowed him twenty minutes to think about it. It must be presumed that Vargas's counsel reviewed the evidence and concluded that the sentence contemplated by the plea bargain was more advantageous than proceeding to trial on the three original counts. *See Premo*, 131 S.Ct. at 741 (deference must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered); *see also Doe v. Woodford*, 508 F.3d 563, 571-72 (9th Cir. 2007). As the Superior Court pointed out in denying this claim, it was not unreasonable for Vargas's counsel to encourage him to accept the plea offer rather than give the district attorney's office an opportunity to add more counts, which may have happened had Vargas rejected the offer. *In re Vargas*, HC

6

7735 at 4-5.  Under the circumstances, it was not reasonably probable that Vargas would have rejected the plea had he had more time to consider it.  Therefore, Vargas has failed to show that counsel was deficient for encouraging him to accept the plea or that prejudice resulted from his acceptance of it.

### C. Failure to Challenge Delay

Vargas argues that, early in his case and before the plea bargain was offered by the district attorney, counsel was ineffective for failing to file a motion to dismiss the charges based on the twelve year delay between the filing of the criminal complaint and his arrest.  However, this argument is foreclosed by Vargas' decision to accept the plea bargain.  *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (guilty plea forecloses habeas claims based on constitutional violations that occurred before plea was entered).

Alternatively, Vargas argues that his plea was not knowing and voluntary because his lawyer advised him to take the deal without informing him that he could move to get the charges dismissed on speedy trial grounds.

As summarized by the Superior Court, the right to a speedy criminal trial is as follows:

> Criminal defendants have a right to a speedy trial under both the California and federal Constitution. (Cal. Const., art I, § 15; U.S. Const. Amends., VI, XIV.)  In a felony case, the federal right to a speedy trial is triggered following the filing of an indictment, an information or a formal arrest associated with a holding order. (*United States v. Marion* (1971) 404 U.S. 307, 320.)  The right to a speedy trial under the California Constitution is triggered upon the filing of a complaint, information, or indictment. (*People v. Hannon* (1977) 19 Cal.3d 588, 604.)  Because petitioner was charged by felony complaint, only his state right to a speedy trial had attached.

*In re Vargas*, No. HC 7735 at 3.  Because the Sixth Amendment speedy trial right is not triggered by the filing of a criminal complaint (even though it is triggered by the filing of an indictment), it was not triggered by the charges brought against Vargas here.  Therefore, Vargas' lawyer could not have brought a Sixth Amendment speedy trial claim; the question is whether his lawyer was ineffective for failing to advise Vargas about the availability of a speedy trial claim under state law or under the federal due process clause.[1]

---

[1] On the surface at least, it makes no sense that the Sixth Amendment speedy trial clock would be

7

1    To establish a violation of the speedy trial right under the California Constitution, a
2    defendant must demonstrate prejudice. *People v. Martinez*, 22 Cal. 4th 750, 755 (2000). He must
3    show that the delay impaired his ability to defend against the charged crimes because, for instance,
4    a witness became unavailable, evidence disappeared, or memories of potential witnesses faded.
5    *People v. Lowe*, 40 Cal. 4th 937, 946 (2007). If the defendant makes such an initial showing, the
6    court must then weigh the prejudice to the defendant against the prosecution's justification for the
7    delay. *Id.* To the extent Vargas contends that the federal due process clause (as opposed to the
8    federal speedy trial right under the Sixth Amendment) is implicated, that too would have required
9    a showing of prejudice, so the inquiry is the same. *See United States v. Bracy*, 67 F.3d 1421, 1427
10   (9th Cir. 1995) (defendant must demonstrate that pre-indictment delay prejudiced his defense);
11   *United States v. Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (proof of prejudice is a "heavy
12   burden that is rarely met").

13   In rejecting Vargas's prejudice argument, the Superior Court reasonably found that,
14   assuming there was no justification for the government's failure to locate and arrest Vargas soon
15   after the charges were filed, Vargas's assertion that he lost contact with witnesses was insufficient
16   to show prejudice, because losing contact with people who might attest to his whereabouts at the
17   time of the offenses did not mean that they "were actually unavailable following a diligent attempt
18   to locate them or that their testimony would address the heart of the allegations." *In re Vargas*,
19   No. HC 7735 at 4. In his federal petition, Vargas also argues that he lost access to documents
20   helpful to his defense, such as time cards from his job, where he worked six days a week from 8
21   a.m. to 5 p.m., which could have shown that he was elsewhere at the time the victims stated the
22   offenses took place. But from the probation report it does not appear that the victims identified
23   particular times when Vargas assaulted them, so it is not at all clear that timesheets would have
24   helped him. Furthermore, the victim statement in the probation report indicates that some of the

---

triggered by an indictment but not by a criminal complaint. But there is conflicting federal authority on that issue, with some courts having interpreted *United States v. Marion*, 404 U.S. 307, 313 (1971) as foreclosing the possibility that the speedy trial clock could be triggered by a criminal complaint. *See Perez v. Hill*, 2013 WL 3982559, *5 (E.D. Cal.) (comparing cases). That is enough, on habeas, to conclude that the state courts did not unreasonably apply federal law in concluding that a Sixth Amendment speedy trial claim was not available to Vargas and his lawyer.

offenses occurred in the victims' bedrooms at night.

Presumably, therefore, Vargas's counsel reasonably concluded that a motion based on the right to a speedy trial would be unsuccessful because Vargas was unable to show prejudice caused by the delay.   Even if counsel should have brought such a motion, Vargas cannot show he was prejudiced by counsel's decision not to do so because the motion – if based on the arguments Vargas makes now – would likely have been denied.  Furthermore, as noted by the Superior Court, "It appears that [counsel] was forthright with petitioner by explaining that the People were making a onetime offer of eight years in state prison.  It was not unreasonable for [counsel] to overtly encourage petitioner to accept the stipulation rather than give the prosecution an opportunity to amend and add more counts, which likely could have happened had petitioner decided to reject the offer." *In re Vargas*, HC 7735 at 4-5.  When the doubly deferential standard under AEDPA is applied, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788.  The Court cannot say that there is no reasonable argument that counsel satisfied *Strickland*'s deferential standard.

In summary, the state court's denial of Vargas's three ineffective assistance of counsel claims was not contrary to or an unreasonable application of *Strickland* and its progeny.

II. Statute of Limitations Claim

Vargas asserts that count IV, one of the two counts to which he pled no contest, and which was charged for the first time in the amended complaint in 2010, was filed after the expiration of its statute of limitations.  This claim is denied because a federal habeas court is precluded from reviewing errors of state law.  *See Swarthout v. Cook*, 131 S. Ct. 859, 861–62 (2011) (error under state law not remediable on federal habeas review, even if state law was erroneously interpreted or applied); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (determinations of state law questions not the province of federal habeas review; habeas review limited to deciding whether conviction violated Constitution, laws or treaties of the United States).

**CONCLUSION**

For the reasons stated above, the petition for a writ of habeas corpus is DENIED. A certificate of appealability is granted for the ineffective assistance of counsel claim based on counsel's failure to bring a motion challenging the twelve-year delay in arresting Vargas. *See* 28 U.S.C. § 2253(c)(2), (3). A certificate of appealability is denied for all other claims.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

Dated: February 2, 2015

_____
VINCE CHHABRIA
United States District Judge